UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BETH BAUER,

                Plaintiff,                        Case No. 14-cv-11158

v                                        Honorable Thomas L. Ludington

COUNTY OF SAGINAW, et al.,

                Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DISMISSING WITHOUT PREJUDICE PLAINTIFF'S BREACH OF CONTRACT CLAIM, DENYING PLAINTIFF'S MOTION TO STRIKE AS MOOT, AND CANCELLING HEARING

On March 19, 2014, Plaintiff Beth Bauer filed suit against her former employers, alleging that Saginaw County Prosecuting Attorney John A. McColgan wrongfully terminated her employment as the Legal Office Manager of the County Prosecutor.  She alleges violations of her First Amendment right to associate, race discrimination, age discrimination, breach of contract, legitimate expectation of just-cause employment, and intentional infliction of emotional distress.

On April 13, 2015, Defendants moved for summary judgment on all of Bauer's claims. Bauer, too, moved for summary judgment; Bauer's motion was limited to her claim for breach of contract.  Defendants' motion for summary judgment on Bauer's claim for violation of the First Amendment will be granted because the Legal Office Manager position is one where political loyalty is appropriate to the effective performance of the elected County Prosecutor.  And Defendant's motion for summary judgment on Bauer's claims of race discrimination, age

discrimination, and legitimate expectation of just-cause employment will be granted because Bauer has not demonstrated a triable issue of fact for each of these claims. Moreover, Bauer's claim for intentional infliction of emotional distress will be dismissed because McColgan, as County Prosecutor, is entitled to absolute immunity from tort claims. Lastly, Defendants' motion for summary judgment on Bauer's breach of contract claim will be granted—and Bauer's denied—because Bauer has not exhausted her administrative grievances as required by the governing collective bargaining agreement. Bauer's breach of contract claim will therefore be dismissed without prejudice so that she may exhaust her administrative remedies.

## I.

Bauer was hired to be the Legal Office Manager for the County Prosecutor on April 21, 1989, by Michael Thomas, who had just been elected County Prosecutor. Before joining the County Prosecutor's Office, she worked as a legal secretary for Mr. Thomas in his law firm.

As part of her job duties as Legal Office Manager, she worked closely with County Prosecutor Thomas, Ex. A at 66, supervised and trained the secretarial staff, *id.*, and oversaw the day-to-day operations of the support staff and operating functions of the office, *id.* at 76. She also took part in hiring decisions, Ex. at 77, and administered the budget, at least with respect to the day-to-day office supplies, witness fees, etc., *id.* at 79.

While employed as the Legal Office Manager, Bauer was represented by the UAW, Local No. 455, Unit 48, Managers (Union) and therefore at least some of her terms and conditions of employment were covered by a collective bargaining agreement (CBA) negotiated with the Union.[1] Until 2008, the CBA provided just-cause employment to the position of Legal Office Manager as well as other members of the Union. In 2008, however, Saginaw County

---

[1] As detailed below, the parties dispute exactly which terms of employment were covered by the CBA.

proposed to eliminate just-cause protection for the Legal Office Manager position and replace it with a terminable at-will employment standard.

The 2008 CBA reflects this new at-will employment standard, but the CBA also reflects the compromise that the Legal Office Manager would be a just-cause position so long as Bauer occupied the position: "Legal Office Manager (at-will employee; see MOU)".  Ex. C. App. A.

"MOU" refers to the Memorandum of Understanding, a document signed by the Saginaw County Controller, County Prosecuting Attorney Thomas, Saginaw County's legal counsel, the Union's International Representative David Kelly, and the Union's Steward Cheryl Jarzabkowski.  The Memorandum of Understanding provides:

> Contingent on ratification of a new CBA, which shall designate in its Appendix that the position of Legal Office Manager in the Prosecuting Attorney's Office is an at-will position, the Employer, Co-Employer and Union agree that the incumbent in said position, Beth Bauer, is not an at-will employee, but rather an employee subject to discipline under a just cause standard.

Ex. G.  The parties dispute whether this language confers just-cause employment on Bauer. Following the creation of the Memorandum of Understanding and the renegotiation of the CBA, Bauer remained employed as the Legal Office Manager.

In 2012, Defendant McColgan ran against and defeated the incumbent County Prosecutor, Mr. Thomas.  Although McColgan's first day as County Prosecutor did not begin until January 2, 2013, he offered the Legal Office Manager position to Ms. Christi Lopez, who was a secretary for Saginaw District Court Judge Christopher Boyd at the time of the election.[2] Ms. Lopez accepted McColgan's offer and resigned from her position as Mr. Boyd's judicial secretary on November 29, 2012.  On December 10, 2012, McColgan e-mailed Bauer to inform her that he was hiring someone else for the position of Legal Office Manager: "As I am sure you are aware, I am planning on bringing in my own office manager . . . ."  Ex. I.

---

[2] McColgan also appointed Mr. Boyd to be Chief Deputy County Prosecutor.

- 3 -

On January 2, 2013—McColgan's first official day as County Prosecutor—Bauer reported to the office to find Ms. Lopez at her desk. When Ms. Bauer asked whether she was fired, McColgan did not give her an answer. Bauer and her union steward contacted the Saginaw County Controller for assistance; the County Controller visited the steward's office that same day and presented Bauer a Notice of Discharge signed by McColgan, which terminated her employment effective January 16, 2013.

Bauer then filed a grievance under Article 5(A) of the CBA, asserting that her termination violated the provisions of the Memorandum of Understanding. Saginaw County and the County Prosecutor denied the grievance, and the parties agreed to hold Bauer's grievance in abeyance.

## II.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

### III.

Defendants seek summary judgment on all of Bauer's claims, which allege (1) § 1983 claim for violation of her First Amendment right to political association, (2) race discrimination, (3) age discrimination, (4) breach of contract, (5) legitimate expectation of employment, and (6) intentional infliction of emotional distress. Bauer, too, moved for summary judgment, focusing on her breach of contract claim. Each of the claims will be discussed in turn.

### A.

Defendants first seek summary judgment on Bauer's claim that the termination of her employment violated her First Amendment right to political association. She claims that she was terminated because of her loyalty to McColgan's predecessor (and opponent). "Since the Supreme Court issued its opinion in *Elrod v. Burns*, 427 U.S. 347 (1976), patronage dismissals (*i.e.*, dismissals for failure to support a particular party or candidate) have been, in general, unconstitutional." *Caudill v. Hollan*, 431 F.3d 900, 908 (6th Cir. 2005). This rule represents the outcome of the Supreme Court's application of the strict scrutiny required by the First Amendment to the interests promoted by the party patronage system. *See McCloud v. Testa*, 97 F.3d 1536, 1543 (6th Cir. 1996).

For a plaintiff to succeed on a political patronage case, she must first demonstrate a *prima facie* case that she was discharged because of her political affiliation. *Branti v. Finkel*, 445 U.S. 507, 518 (1980). If the plaintiff succeeds in making that showing, the defendant must then show that the position is of a type that would qualify for an exception to the rule against patronage dismissals. *Id*.

**i.**

Here, Bauer claims that McColgan terminated her employment because she had worked for his predecessor Mr. Thomas for over twenty years and had supported Mr. Thomas's campaign.  Indeed, McColgan admits as much: "I did not reappoint Beth Bauer to the position of Legal Office Manager because Ms. Bauer was employed by my predecessor twenty plus years." McColgan Aff. ¶ 5, Defs.' Mot. Summ. J. Ex. D.

In their motion, Defendants make much of the fact that McColgan's decision to terminate Bauer's employment was because of "Plaintiff's relationship/ loyalty to Mr. Thomas, the absence of relationship with Mr. McColgan," and not "politics."  Defs.' Mot. Summ. J. 8.

But even if Defendants are correct and McColgan terminated Bauer's employment for "personal" affiliation rather than "political" affiliation, the termination could still be improper. The Sixth Circuit has held that even though "[t]he political motivations underlying this case are personal, not partisan," the personal nature of the motivations "does not remove them from examination under *Branti*."  *Faughender v. City of North Olmstead, Ohio*, 927 F.2d 909, 914 n.2 (6th Cir. 1991) (concluding that "a mayor's secretary is clearly the type of position that involves access to confidential and political material, and political loyalty, whether partisan or personal, is an essential attribute of the job.").  Accordingly, because McColgan admits that he terminated Bauer's employment out of concerns about her loyalty after working with his predecessor, Bauer has established a prima facie case that she was discharged because of her political affiliation.

**ii.**

The burden then shifts to Defendants to establish that the position of Legal Office Manager is of a type that would qualify for an exception to the rule against patronage dismissals. *Branti*, 445 U.S. at 518.  Although patronage dismissals are generally prohibited, the Supreme

Court in *Elrod* recognized that "party affiliation may be an acceptable requirement for some types of government employment." *Id.* at 517. To determine whether a patronage exception is applicable, the ultimate inquiry is "whether the hiring authority can demonstrate that party affiliation is an *appropriate* requirement for the effective performance of the public office involved." *Lane v. City of LaFollette, Tenn.*, 490 F.3d 410, 419 (6th Cir. 2007) (emphasis added).

As a starting point, in *McCloud v. Testa*, the Sixth Circuit outlined four categories of government positions that will always qualify for patronage exceptions: (1) those that are specifically named in a relevant statute or that are charged with the discretionary authority to carry out the law or other policy of political concern; (2) a position to which discretionary decision-making of the first category has been delegated; (3) confidential advisors who spend a significant amount of their time advising category-one employees on how to exercise their statutory policymaking authority, or other employees who control the lines of communications to category-one employees; and (4) positions filled to balance out party representation. 97 F.3d at 1557.

However, a government position may be covered by the *Elrod/Branti* exception even though it does not correspond precisely to any one *McCloud* category. *Sowards v. Loudon County, Tenn.*, 203 F.3d 426, 436 (6th Cir. 2000) ("A government position is not required, however, to fall neatly within one of the categories to be entitled to the *Elrod-Branti* exception.). If it is unclear whether a government position belongs to a *McCloud* category, a court is to construe the position as one that qualifies for the *Elrod/Branti* exception. *See McCloud*, 97 F.3d at 1557 ("we note that if there is any ambiguity about whether a particular position falls into any of them (and so also within the *Branti* exception), it is to be construed in favor of the

governmental defendants when the position at issue is unclassified or non-merit under state law per the *Rice* canon.").

To determine whether political affiliation is appropriate in making a personnel decision, a court must examine the duties inherent to the position and the duties of that position as envisioned by an incoming officeholder for whom a person filling that position will work. *Baker v. Hadley*, 167 F.3d 1014, 1018 (6th Cir. 1999); *Rice v. Ohio Dep't of Transp.*, 14 F.3d 1133, 1140 (6th Cir. 1994).[3] Although the testimony of a person who has held the position in question may be considered, there may be significant division between duties inherent in a position and the tasks actually performed by someone who previously held that position. *See Hoard v. Sizemore*, 198 F.3d 205, 213 (6th Cir. 1999) ("One way of determining what those [inherent] duties are is to consider the testimony of a person who has held that position, although such testimony is not decisive.") (citing *Smith v. Sushka*, 117 F.3d 965, 970 (6th Cir. 1997) ; *Williams v. City of River Rouge*, 909 F.2d 151, 154-55 (6th Cir. 1990) (finding that, even if plaintiff who served as city attorney performed largely ministerial functions in that capacity, the position is inherently political). Therefore a court is to analyze the duties of the position "both in the abstract and as envisioned by the new" officeholder, *Rice v. Ohio Dep't of Transp.*, 14 F.3d 1133, 1140 (6th Cir. 1994), and only if the duties cannot be fully determined using these criteria should a court examine the duties actually performed by the plaintiff. *Baker*, 167 F.3d at 1018 ("When the inherent duties are not readily discernible, courts may look to the duties as the plaintiff actually performed them as evidence of what the position inherently entails.").

The inherent job duties of a "manager" tend to include organization, direction, regulation, and deployment of staff and resources. *See* Oxford English Dictionary. These duties necessarily

---

[3] The ascription of broadly defined duties to a government position makes it more likely that the position qualifies for the *Elrod/Branti* exception. *Hoard v. Sizemore*, 198 F.3d 205, 212 (6th Cir. 1999).

require a manager to exercise discretion and control in their performance, thus requiring some level of executive or supervisory function. Indeed, that these are inherent duties of the Legal Office Manager position is supported by the job description Bauer approved in 2000.[4] The job description provides that the Legal Office Manager has the following "Major Purpose[s]":

> To manage the Saginaw County Prosecutor's Office. Ensure adequate staff levels and coverage. Oversee day-to-day operations of support staff and operating functions of the office. Administer Prosecutor's budgets totaling $3.7 million and direct interstate extraditions and renditions.

Defs.' Mot. Summ. J. Ex. B. These purposes are reiterated later in the job description, which lists the "Essential Duties and Responsibilities" of the Legal Office Manager as:

> Direct and control all support staff including discipline, hiring and firing.

> Develop, administer and monitor $3.7 million Prosecutor's Budgets.

> Purchase and maintain office equipment and supplies.

> Responsible for maintaining and inputting payroll for Prosecutor's Office.

> Daily contact with courts, public and law enforcement agencies, fielding questions and directing to appropriate sources.

> Process and pay all bills and invoices for offices.

> Administer and direct intra and interstate extraditions and renditions including Governor's Warrants.

Defs.' Mot. Summ. J. Ex. B. at 3. Thus, the inherent duties of the Legal Office Manager, as supported by the job description, require that the Legal Office Manger exhibit more than ministerial competence; the Legal Office Manager has autonomy and discretion in performing her duties. Thus, the position of Legal Office Manager is a category 2 position, as based on the inherent nature of the associated duties.

---

[4] Bauer testified that she could not remember whether she helped prepare or had any input in creating the job description. Nonetheless, she signed on the line for "Dept Head Approval". Defs.' Mot. Summ. J. Ex. B at 4.

Bauer disputes this categorization, claiming that the Job Description she approved years before this litigation began grossly overstates her job duties, and that the way she *actually* performed the job duties shows that she had little or no discretion or supervisory authority.[5]  In other words, Bauer requests that this Court look to how she previously performed the job functions instead of the inherent duties of a Legal Office Manager.  But a court only looks to past performance when the inherent duties cannot be fully determined.  As described above, the term "manager" is associated with discretion and control, and the job description illustrates that the Legal Office Manager is indeed vested with significant input—if not control—over staffing, budgeting, and discipline.  Accordingly, the fact that Bauer did not actually exercise such significant control does not create an issue of fact.  *See Baker*, 167 F.3d at 1019 ("On the other hand, Plaintiffs' evidence, taken in the light most favorable to them, shows only that they may not have performed political or policymaking tasks when they worked under Kent Bell.  This evidence does not demonstrate that their positions were 'inherently' non-confidential or non-policymaking.").

But even if the Court heavily credited Bauer's argument that she personally did not perform those duties, Defendants would still be entitled to summary judgment because McColgan wants *his* Legal Office Manager to be in a confidential position:

> I have delegated significant discretionary authority to the Legal Office Manager. The Legal Office Manger oversees and operates the Prosecuting Attorney's Office.  She interviews, investigates, and makes hiring, firing and disciplinary recommendations regarding all support staff.  She collaboratively develops and implements office policy.  She collaboratively develops, administers and monitors the Prosecutor's Office budget.  She serves as my liaison regarding employment and personnel matters including grievances and arbitrations.  She serves as my

---

[5]  Importantly, the Michigan law provides that County Prosecuting Attorneys have the discretion to appoint "investigating officers, clerks, stenographers *and other clerical employees*," Mich. Comp. Laws § 49.31, which serve at the pleasure of the County Prosecuting Attorney.  *See Genesee County Social Services Workers Union v. Genesee County*, 502 N.W.2d 701, 703-04 (Mich. Ct. App. 1993).  Accordingly, if Bauer was merely a clerical employee, she would be subject to the state statute authorizing County Prosecutor to fill the position at his pleasure.

> liaison to the courts, Sheriff's Department, local police agencies and elected officials and controls the lines of communications with these entities.

McColgan Aff. ¶ 6. McColgan further avers that the Legal Office Manager, as he envisions the position, collaborates on the budget and "is privy to confidential communications related to budget administration of my office, and certain prosecutorial and political functions." *Id.* ¶¶ 7-8.

In other words, Defendants have proffered evidence that, even if the Legal Office Manager position would not have been protected previously, McColgan has altered the duties to turn the position into a confidential one. The Sixth Circuit "has expressly held that government officials may freely reorganize their departments, even if that entails transforming a previously ministerial position into a confidential or policymaking one." *Baker*, 167 F.3d at 1019. The only limitation on government officials is that they "must act 'with a good faith belief that such a transformation is necessary to implement his policies.'" *Id.* at 1020. And here, Bauer has not proffered evidence that McColgan's claims regarding his expectations of the Legal Office Manager are in bad faith.

Accordingly, Defendants have presented sufficient evidence that, in McColgan's administration, his Legal Office Manager is a position for which political affiliation and loyalty is an appropriate requirement for the effective performance of the County Prosecutor's Office. Therefore, summary judgment will be granted in favor of Defendants on Bauer's political patronage claim.

**iii.**

Because Bauer did not establish that a constitutional violation occurred, this Court need not address the issue of whether McColgan enjoys qualified immunity from suit. *See Salehpour v. University of Tennessee*, 159 F.3d 199, 208 (6th Cir. 1998) (stating that qualified immunity analysis is appropriate only where it is first found that a constitutional violation occurred).

**B.**

Defendants next seek summary judgment on Bauer's race discrimination claim under Title VII and Michigan's Elliott-Larsen Civil Rights Act.   The analysis of Bauer's race discrimination claims under each statute are generally the same.  *Nelson v. City of Flint*, 136 F. Supp. 2d 703, 713 (E.D. Mich. 2001) (citing *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988)).

To present a *prima facie* case of race discrimination using indirect evidence under the *McDonnell Douglas* framework, Plaintiff must show that (1) she is a member of a protected class, (2) she was subject to an adverse employment action, (3) she was qualified for her position, and (4) she was replaced by a person outside the protected class or that a comparable non-white person was treated differently.  *Vaught v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (6th Cir. 2002).  Because Bauer is Caucasian (and therefore not a member of a racial minority), the *McDonnell Douglas* framework is adapted to her reverse discrimination claim. *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 255 (6th Cir. 2002).

To prevail in a "reverse discrimination" case, a plaintiff must show "background circumstances support[ing] the suspicion that the defendant is that unusual employer who discriminates against the majority" to satisfy the first prong of the test.  *Zambetti*, 314 F.3d 249, 255 (6th Cir. 2002) (quoting *Murry v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985)).  "Background circumstances" could include showing, for example, that she was "a Caucasian employee in a workplace predominantly staffed and managed by African-Americans." *Weberg v. Franks*, 229 F.3d 514, 523 n. 9 (6th Cir. 2000).  Alternatively, she could produce evidence "of the defendant['s] unlawful consideration of race in employment decisions in the

- 12 -

past." *Zambetti*, 314 F.3d at 256 (finding that such evidence "justifies a suspicion that incidents of capricious discrimination against whites because of their race may be likely").

Bauer has presented no such evidence. Instead, she merely asserts that she is part of a protected class because she is Caucasian. But this is insufficient for a reverse race discrimination claim, as outlined above. Therefore, she has not established even the first prong of her *prima facie* case, and her reverse race discrimination claim will be dismissed.

## C.

Defendants also seek summary judgment on Bauer's age discrimination claim. The Age Discrimination in Employment Act ("ADEA") provides that it shall be unlawful for an employer "to fail or refuse to hire or to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA protects individuals forty years of age or older. *Id*. Similarly, Michigan's Elliot Larsen Civil Rights Act (ELCRA) prohibits an employer from discharging an employee because of age. *See* Mich. Comp. Laws § 37.2202(1)(a).

To establish a *prima facie* case of age discrimination under both the AEDA and ELCRA using indirect evidence, the plaintiff must show: (1) she was at least forty years old when the alleged discrimination occurred; (2) she applied for and was qualified for a position for which the employer was seeking applicants; (3) despite her qualifications she was rejected and (4) the employer selected a substantially younger person for the position. *Geiger v. Tower Automotive*, 579 F.3d 614, 622-23 (6th Cir. 2009); *Provenzano v. LCI Holdings*, 663 F.3d 806, 818 (6th Cir. 2011) (noting that Michigan has adopted the *McDonnell Douglas* analysis for ELCRA claims).

Here, Bauer has carried her initial burden of establishing her *prima facie* case: she is at least forty years old, she was qualified for her position, her employment was terminated, and she was replaced by Ms. Lopez, who is outside the protected class.[6]

Once the plaintiff establishes a *prima facie* case, as here, the defendant has the burden of producing evidence of a legitimate, non-discriminatory reason for the challenged adverse employment action. *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1126 (6th Cir. 1998). Defendants proffer the affidavit of McColgan, who testifies that he terminated Bauer's employment because (1) she "was employed by my predecessor for twenty plus years," (2) "it was reported to me that Ms. Bauer made comments indicating that she 'could not' and 'would not' work for me," (3) there were criticisms regarding Bauer's "favoritism" in the management of the office. McColgan Aff. ¶ 5. For purposes of summary judgment on her age discrimination claim, Bauer does not dispute that these are legitimate, non-age-discriminatory reasons for terminating her employment.

If the defendant meets its burden of production, the AEDA requires the plaintiff to then demonstrate that the defendant's proffered reason is a mere pretext for age discrimination. *Id.* "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). Throughout the case, the plaintiff bears the ultimate burden of proving that age was the "but for" reason for the adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

---

[6] Although Bauer does not proffer any evidence that Lopez is outside the protected class, it appears that this point is nonetheless conceded by Defendants. Indeed, the parties offer no evidence of Lopez's age (such as deposition testimony), but in their motion, Defendants explain that she is 40 years old.

Here, Bauer attempts to show that McColgan's proffered reasons were pretextual in several ways. First, she claims that, until this lawsuit, she was never provided with an explanation for why her employment would be terminated. Moreover, she claims, any proffered justifications have no basis in fact because Defendants failed "to provide any evidence to support the veracity of its claims . . . ." Pl.'s Resp. 23 ("Mr. McColgan is unable to explain where he received this information and can give no factual basis for his belated claims.").

Bauer's disagreement with McColgan's reasons, alone, is not sufficient, however. "Courts have repeatedly held that the plaintiff's denial of the defendant's articulated legitimate reason *without producing substantiation* for the denial is insufficient for a discrimination claim to withstand a motion for summary judgment." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992) (citing *Irvin v. Airco Carbide*, 837 F.2d 724, 727 (6th Cir. 1987) and *Ridenour v. Lawson Co.*, 791 F.2d 52, 57 (6th Cir. 1986). As stated by the Supreme Court, "[i]t is not enough to disbelieve the employer, the factfinder must believe the plaintiff's explanation of intentional discrimination." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146-47 (2000).

Although Defendants met their burden of production by submitting McColgan's affidavit in which he explains that he fired her because of possible disloyalty, Bauer contends that this is insufficient and that Defendants must produce additional evidence verifying that statement. But this is not the standard. Even if McColgan was wrong about Bauer's ability to work with others, he is shielded by the honest belief rule. *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (a plaintiff cannot demonstrate pretext "simply because [the reason] is ultimately shown to be incorrect."). The employer can establish "honest belief" by showing his "reasonable reliance on the particularized facts that were before it at the time the decision

- 15 -

was made." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).  Bauer has not proffered any evidence that McColgan did not honestly believe that she exhibited favoritism or "would not work with" him; instead, she would shift the burden back to him to prove that she did.   But this is not the standard, and Bauer cannot show that McColgan lacked an honest belief simply by disagreeing.

Lastly, Bauer claims that because she had significantly more experience as the Legal Office Manager than her replacement, a jury could conclude that McColgan's reason for her termination was pretextual.  True, where "a factfinder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate—something that employers do not usually do, unless some other strong consideration, such as discrimination, enters the picture." *Aka v. Washington Hosp. Center*, 156 F.3d 1284, 1294 (D.C. Cir. 1998).

But these cases are inapposite here because in those cases, the employer's proffered reason for hiring someone else was that the other person was more qualified.   *See Aka*, at 1294 ("[Employer] claims that it hired Valenzula because he was more qualified than Aka.   Aka replies that [employer] is mistaken as to their comparative qualifications, and that it was he, Aka, who was more qualified for the position.); *Greenfield v. Sears, Roebuck and Co.*, 2006 WL 508655, at *9 (E.D. Mich. Mar. 2, 2006) (where "Defendant contends that Plaintiff was legitimately less qualified than Shapiro for the store manager position," evidence of Plaintiff's relevant qualifications could establish pretext); *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 624 (6th Cir. 2006) (employer retained employee who "purportedly had the strongest experience and abilities in merchandising . . . [and] embraced the company's plan-o-grams merchandising

system," a system that plaintiff "purportedly did not fully understand . . . ."); *see also Skelton v. Sara Lee Corp.*, 249 F. App'x 450, 460-61 (6th Cir. 2007) (although plaintiff proffered evidence that the retained employees were less qualified, he "proffers no evidence that the retained [employees] were deficient with regard to Defendant's asserted non-discriminatory reason for the employees' termination.").

Here, in contrast, McColgan did not claim that Bauer was less experienced or less qualified than her replacement. Instead, he claims that he believed that she would not work effectively with him and that she exhibited favoritism in the management of the Office. That she was more qualified than anyone else does nothing to refute McColgan's beliefs or show that they did not motivate her dismissal.

In summary, Bauer has not met her burden of producing evidence from which a reasonable juror could conclude that McColgan's decision to terminate her employment was a pretext for age discrimination. As there is insufficient evidence to create a genuine issue of material fact that the Defendants' articulated reasons were pretextual, summary judgment will be granted on her ADEA discrimination claim.

### D.

Defendants next assert that Bauer was obligated to exhaust her administrative remedies and that, in failing to do so, her contract claims are barred. Specifically, Defendants assert that Bauer should have utilized the grievance procedure mandated in the CBA before filing suit.

The 2004 CBA creates a mandatory grievance procedure for all "grievances, disputes, or complaints arising under and during the term of this Agreement, involving any employees in a non-court, elected department" such as the County Prosecutor's office. By its own terms, however, the grievance procedure is limited to disputes arising under the CBA:

> A grievance is any dispute, controversy, or difference between (a) the parties, (b) EMPLOYER and an employee or employees on any issues with respect to, on account of, or concerning the meaning, interpretation, or application *of this Agreement, or any terms or provisions thereof.*

CBA Article 5(a)(2). Ex. F at 11.  Accordingly, Bauer would only be obligated to comply with the grievance procedure if her grievance arose out of a dispute with respect to the CBA.

Both parties agree that Bauer's grievance arises out of the language contained in the Memorandum of Understanding; the parties disagree, however, on whether the Memorandum of Understanding itself is part of the CBA—and therefore subject to the grievance-exhaustion requirement.  Defendants summarily contend, without any explanation or justification, that the MOU is part of the CBA: "Plaintiff's alleged violation of the MOU and/or the CBA constitute a dispute, controversy, or difference between an employee and the County Prosecutor." Defs.' Mot. Summ. J. at 37.  Likewise, Bauer summarily contends that the MOU is a separate contract: "Further, and most significantly, the MOU is not part of the CBA, it is a separate contract . . . ." Pl.'s Resp. 30.

The Court must begin by looking at the terms of the MOU and CBA themselves.  Neither party highlights the key provision in the 2013 CBA that incorporates the MOU by reference.  On page 40, the CBA identifies the Legal Office Manager as an at-will position before reference the MOU: "Legal Office Manager (at-will employee; see MOU)".  CBA at 40, Ex. F.

Michigan law permits a party to incorporate terms or documents from other writings.  *See Robert Bosch Corp. v. ASC Inc.*, 195 F. App'x 503, 505 (6th Cir. 2006) (citing *Forge v. Smith*, 580 N.W.2d 876, 881-82 (1998)).  "In a written contract a reference to another writing, if the reference be such as to show that it is made for the purpose of making such writing a part of the contract, is to be taken as a part of it just as though its contents had been repeated in the contract."  *Id.* at 881 n. 21 (quoting *Whittlesey v. Herbrand Co.*, 187 N.W. 279 (Mich. 1922)).

- 18 -

Under Michigan law, an "incorporating instrument must clearly show intent that outside document be considered part of the contract." *NILAC Intern. Marketing Group v. Ameritech Services, Inc.*, 362 F.3d 354, 358 (6th Cir. 2004).

Here, the parties to the MOU have evidenced an intent for the MOU to be incorporated into the CBA. The plain language of the CBA directs the reader to consult the MOU's provisions allegedly modifying the at-will nature of the Legal Office Manager position: "Legal Office Manager (at-will employee; see MOU)". *See also In re Brockman*, 451 B.R. 421, 427 (B.A.P. 2011) (applying Kentucky law and concluding that the phrase "see EXHIBIT A" was sufficient to incorporate Exhibit A by reference). And because the MOU was incorporated by reference into the CBA, its provisions likewise became a part of the CBA. Thus, any challenges to the MOU became challenges to the CBA, and Bauer's challenge to the MOU's language is a challenge to "the meaning, interpretation, or application of this [CBA], or any terms or provisions thereof." Accordingly, Bauer is obligated to exhaust her administrative remedies pursuant to the CBA with respect to her breach of contract claims.[7]

Bauer contends that there was no intent to incorporate the MOU into the CBA. Instead, she offers extrinsic evidence that purportedly shows that Defendants did not intend to incorporate the MOU into the CBA, such as the fact that the MOU was not distributed to the parties, released as an attachment, or provided in response to the "Mackinaw Center's request seeking a copy of the CBA . . . ." Pl.'s Mot. Summ. J. 21. But the Court is barred from considering this extrinsic evidence under Michigan law. *Cook v. Little Caesar Enters.*, *Inc*. 210 F.3d 653, 656 (6th Cir. 2000). Extrinsic evidence is permitted only when the terms of the contract are ambiguous; here, the "see MOU" in the Appendix of the CBA is clear and

---

[7] Bauer focuses instead on the reasons that the MOU did not incorporate the CBA. But no party is arguing that the MOU does incorporate the CBA.

unambiguous.  Accordingly, this Court is prohibited from "look[ing] to extrinsic testimony to determine their intent when the words used by them are clear and unambiguous and have a definite meaning."  *Wonderland Shopping Center Venture Ltd. Partnership v. CDC Mortg. Capital, Inc.*, 274 F.3d 1085, 1095-96 (6th Cir. 2001) (quoting *Mich. Chandelier Co. v. Morse*, 297 N.W. 64, 67 (Mich. 1941)).

Here, the parties agree that Bauer has not exhausted her remedies pursuant to the CBA's grievance procedure.  Bauer initiated a grievance after the termination of her employment, but the grievance was stayed pending this litigation.  An employee is required to exhaust grievance and arbitration procedures before initiating a suit against his union or employer.  *Clayton v. Int'l Union*, 451 U.S. 679, 681 (1981).  Nonetheless, the failure to exhaust grievance procedures may be excused if (1) such exhaustion would be futile, or (2) the union breaches a duty of fair representation."  *Wilson v. Int'l Bhd. of Teamsters*, 83 F.3d 747, 753 (6th Cir. 1996).  Bauer does not allege that either of these exceptions apply, and therefore this Court is forced to conclude that they do not.

Accordingly, Defendant's motion for summary judgment will be granted on this claim. And, because Plaintiff's motion seeks summary judgment[8] on her breach of contract claims, her motion will be denied without prejudice.

### E.

Bauer also filed a motion to strike certain exhibits from Defendants' motion for summary judgment that Defendants purportedly use to validate their argument that Bauer's breach of

---

[8] Although Bauer seeks summary judgment on her contract claims, her motion contains phrasing more appropriate for a motion to strike affirmative defenses pursuant to Rule 12(f).  For example, she repeatedly requests that this Court dismiss Defendants' affirmative defenses, *e.g.*, "This Court Should Dismiss Defendants' Affirmative Defense Number 17 . . . ."  But even if all of Defendants' affirmative defenses were dismissed, Bauer would not necessarily be entitled to summary judgment.  The party moving for summary judgment has the burden of proving there is no material issue of fact.  Simply succeeding in having an opponent's defenses dismissed does not mean that Bauer would have carried her burden.  Despite this inconsistency, in reviewing Bauer's motion, the Court assumed that Bauer was seeking summary judgment on her breach of contract claim rather than dismissal of affirmative defenses.

contract claim should be dismissed on the merits.  Because Bauer was obligated to exhaust the grievance procedures outline in the CBA, the Court need not examine the merits of her breach of contract claim.  And because the Court is not reaching the merits, the Court need not decide the propriety and relevance of Exhibits H and K on Bauer's breach of contract claim.  Accordingly, the motion to strike will be denied as moot.

**F.**

In their motion, Defendants seek summary judgment on Bauer's legitimate expectation claim.[9]  Bauer did not, however, address that argument in her response brief.

**i.**

Generally, a party may abandon claims by failing to address or support them in a response to a motion for summary judgment.  *See, e.g., Clark v. City of Dublin, OH.*, 178 F. App'x 522, 524-25 (6th Cir. 2006) (finding that, when a plaintiff did not properly respond to arguments asserted by a defendant's motion for summary judgment as to two claims, "the District Court did not err when it found that the Appellant abandoned [those] claims"); *Anglers of the Au Sable v. United States Forest Service*, 565 F. Supp. 2d 812, 839 (E.D. Mich. 2008) ("It is well settled that abandonment may occur where a party asserts a claim in its complaint, but then fails to address the issue in response to an omnibus motion for summary judgment.").  The Court will thus deem Bauer's Legitimate Expectation abandoned, and Defendants' motion for summary judgment will be granted with respect to that claim.

**ii.**

But even if Bauer had not abandoned her legitimate expectation claim, Defendants are nonetheless entitled to summary judgment on the claim.  In her complaint, Bauer contends that she had a legitimate expectation of just cause employment based on Defendants' "specific

---

[9] In her response, she notes that she is withdrawing her claim of Tortious Interference.  Pl.'s Resp. 33 n.23.

statements in response to [her] inquiries," ¶ 86, and other "representations, assurances, and statements repeatedly made to Beth Bauer . . . that she was a just cause employee, that she had nothing to worry about because her just cause job as Legal Office Manager was protected until she chose to vacate it," ¶ 87, and other statements made specifically to Bauer.

The legitimate expectation doctrine (also known as the "handbook exception" to the employment-at-will doctrine), recognizes that employees may hold employers to enforcement of policy terms relating to job security as long as the policy remains in effect.  The purpose of the doctrine is to "encourage an 'orderly, cooperative and loyal work force."  *Rood v. General Dynamics Corp.*, 507 N.W.2d 591, 606 (quoting *Toussaint v. Blue Cross & Blue Shield of Michigan*, 292 N.W.2d 880, 892 (Mich. 1980)).

Importantly, however, the legitimate expectation doctrine applies only to "employer policy statements that are disseminated either 'to the work force in general or to specific classifications of the work force, *rather than to an individual employee*.'"  *Id*. at 606 (quoting *Bankey v. Storer Broadcasting Company*, 443 N.W.2d 112, 114 n.3 (Mich. 1989).  "The legitimate expectations exception is therefore inappropriate where desirable policies and procedures are applicable only to an individual employee," because "[t]he whole rationale underlying legal enforcement of such policies and procedures . . . is the idea that other employees are likely aware of the policies and procedures and that the employer benefit is realized overall."  *Id.* at 606 n.31; *see also Kerns v. Dura Mechanical Components, Inc.*, 1997 WL 33330830, at *1 (Mich. Ct. App. Dec. 5, 1997) ("It is clear that plaintiff relies on oral statements made to him by defendant's predecessor to support his claim that he could only be discharged for good cause.  We do not believe that such statements, *when made to an individual employee*, can be the basis of a "legitimate expectations" claim.") (emphasis added);

*Ledgerwood v. National Amusements, Inc.*, 625 F. Supp. 2d 466, 472 (E.D. Mich. 2007) ("The remaining statements by Schwick and Wick which Plaintiff relies upon do not reasonably instill a legitimate expectation of just cause employment because there is no evidence the alleged promises were made to anyone other than him."). Here, Bauer's claim is premised solely on "representations and assurances" made only to her and that applied only to her. This type of individual applicability is not covered by the legitimate expectation doctrine, and summary judgment is appropriate.[10]

### G.

Lastly, Defendants contend that McColgan is immune from Bauer's state law claim for intentional infliction of emotional distress under the Governmental Tort Liability Act ("GTLA"), which provides: "A judge, legislator and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative or executive authority." Mich. Comp. Laws § 691.1407(5).

Here, Bauer alleges that McColgan wrongfully terminated her employment, and that this action was outside the scope of his authority as County Prosecutor. In *Marrocco v. Randlett*, 433 N.W.2d 68, 73 (Mich. 1988), the state supreme court explained the statutory immunity provided to the highest executive officials, noting that they enjoy immunity only for acts within the scope of their authority. "The determination whether particular acts are within their authority depends on a number of factors, including the nature of the specific acts alleged, the position held by the

---

[10] The legitimate expectation doctrine is independent of any contractual obligation, so even though Bauer's breach of contract claim is not yet ripe, the Court may nonetheless address her independent claim for legitimate expectation of just cause employment. *Rood v. General Dynamics Corp.*, 507 N.W.2d 591, 606 (Mich. 1993) ("In short, in addition to the traditional grounds for enforcing promises, this perceived employer benefit is recognized under *Toussaint* as a sufficient, and independent, basis for enforcing promises of job security contained in employer policy statements . . . .").

official alleged to have performed the acts, the charter, ordinances, or other local law defining the official's authority, and the structure and allocation of powers in the particular level of government." *Id.*   Ultimately, however, "[t]he employee must have been acting within the scope of the reasonable power delegated to him to accomplish the business of his employer under the circumstances and the actions must have been taken in furtherance of the employer's purpose." *Mills v. Rodabaugh*, 2009 WL 5171846, at *10 (E.D. Mich. Dec. 22, 2009) (quoting *Cibulas v. Bayside Homes, LLC*, 2004 WL 1057821, at *2 (Mich. Ct. App. May 11, 2004).  The plaintiff has the burden of establishing a statutorily created exception to absolute sovereign immunity. *Chambers v. City of Detroit*, 786 F. Supp. 2d 1253, 1272 (E.D. Mich. 2011).

There is no dispute that McColgan, as Prosecutor, is the county's highest elected official. Accordingly, he is immune from tort liability under Michigan law so long as he was acting within the scope of his authority.  *See Glomski v. County of Oakland*, 2007 WL 925681, at *8 (E.D. Mich. Mar. 28, 2007) (elected sheriff immune from gross negligence, assault, and battery tort claims); *HRSS, Inc. v. Wayne County Treasurer*, 279 F. Supp. 2d 846, 851 (E.D. Mich. 2003) (county sheriff and treasurer immune from liability for conversion, wrongful appropriation, unjust enrichment, and breach of fiduciary duties.); *Cheolas v. City of Harper Woods*, 2009 WL 388548, at *9 (E.D. Mich. Feb. 13, 2009) (city attorney immune from liability on claims for malicious prosecution and intentional infliction of emotional distress).

Here, McColgan was acting within the scope of his authority when he decided to terminate Bauer's employment as the Legal Office Manager.   The Michigan Supreme Court clarified that "'executive authority' as used in Mich. Comp. Laws § 691.1407(5) means all authority vested in the highest executive official by virtue of his or her position in the executive branch." *Petipren v. Jaskowski*, 833 N.W.2d 247, 257 (Mich. 2013).   As Prosecuting Attorney,

McColgan is authorized to oversee and manage the Office of the Prosecuting Attorney. This is underscored by Mich. Comp. Laws § 49.31, which authorizes the Prosecuting Attorney to appoint "investigating officers, clerks, stenographers and other clerical employees" as necessary. This language illustrates that the Prosecuting Attorney has at least some authority to select the staff in his Office.

Moreover, the Michigan Supreme Court clarified that an elected official's "executive authority" is not limited to those functions that are unique to the position. "In context, the term 'executive authority' does not contemplate whether the highest appointive executive official performed high-level duties exclusive to his or her position, but simply whether the official exercised authority vested in the official by virtue of his or her role in the executive branch." *Petipren*, 833 N.W.2d at 257.

And although Bauer claims that her position as Legal Office Manager was not explicitly enumerated in the statute, nowhere does the statute *prohibit* the Prosecuting Attorney from terminating individuals who work in his office. *See, e.g., Patriot Ambulance Service, Inc. v. Genesee County*, 666 F. Supp. 2d 712, 720 (E.D. Mich. 2009) ("Even if Plaintiffs are correct, there is nothing in the statute that expressly prohibits the conduct at issue. . . . Thus, there is no sufficient basis for deeming conduct ultra vires as interpreted by Michigan case law."). Accordingly, by virtue of his role as Prosecuting Attorney, McColgan necessarily was authorized to make hiring and termination decisions concerning the personnel employed in his Office. As such, McColgan is entitled to absolute immunity from Bauer's intentional infliction of emotion distress claim.

**IV.**

Accordingly, it is **ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 42) is **GRANTED**.

It is further **ORDERED** that Bauer's § 1983 claim (Count I), race discrimination claim (Count II), age discrimination claim (Count III), legitimate expectation of just cause employment claim (Count V), tortious interference with business expectancy (Count VI), intentional infliction of emotional distress (Count VII), and request for declaratory judgment (Count VIII) are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Bauer's breach of contract claim (Count IV) is **DISMISSED WITHOUT PREJUDICE**.

It is further **ORDERED** that Plaintiff Bauer's Motion for Partial Summary Judgment (ECF No. 41) is **DENIED**.

It is further **ORDERED** that Plaintiff Bauer's Motion to Strike (ECF No. 46) is **DENIED AS MOOT**.

It is further **ORDERED** that the motion hearing set for July 1, 2015 is **CANCELLED**.


s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: May 28, 2015

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 28, 2015.

s/Karri Sandusky
Karri Sandusky, Acting Case Manager